# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN DOE** | : | |
| | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 13-5156** |
| **TEMPLE UNIVERSITY, et al.** | : | |
| | : | |

## ORDER

**AND NOW**, this 6th day of August, 2014, upon consideration of "Temple Defendants'

Motion to Dismiss Plaintiff's Complaint Against Temple Defendants Pursuant to Rule 12(b)(6)

of the Federal Rules of Civil Procedure" (Doc. No. 9) and the Plaintiff's Response (Doc. No.

13), we find as follows:

## FACTUAL AND PROCEDURAL HISTORY[1]

1.      In the fall of 2012, Plaintiff, an African-American male, was a student at Temple

University's ("Temple") Kornberg School of Dentistry in Philadelphia, Pennsylvania.

On the evening of September 25, 2012, Plaintiff was in the Temple medical school

library where he saw, but did not interact with, another Temple student, Lisa Naujoks,

who is Caucasian.  Plaintiff left the library shortly after Ms. Naujoks, intending to return

to his apartment at 1512 Spruce Street.  He claims to have mistakenly boarded the wrong

subway line, which happened to be the line and car occupied by Ms. Naujoks.  Plaintiff

---

[1] When deciding a motion to dismiss for failure to state a claim brought pursuant to Federal Rule
of Civil Procedure 12(b)(6), a district court must assume the veracity of all well-pleaded facts
found in the complaint.  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  We assume that all such
facts found in the complaint are true, and to the extent any facts from outside the amended
complaint are recited, they are included for informational purposes only.  <u>See Ethypharm S.A.
France v. Abbott Labs.</u>, 707 F.3d 223, 225 n.1 (3d Cir. 2013).

got off of the subway at 8th and Filbert Streets when he realized his mistake, one stop after Ms. Naujoks had departed.

2.    Approximately twenty minutes after disembarking, Plaintiff encountered Ms. Naujoks again near 10th and Arch Streets.  He briefly attempted to converse with her before leaving to return to his apartment.  Plaintiff asserted that he made "an awkward attempt to introduce himself to [Ms. Naujoks] by using humor that was not intended to be malicious." (Compl. ¶ 221.)

3.    On September 28, 2012, Plaintiff was arrested by two Temple police officers based upon the incidents that transpired on September 25th, as recounted by Ms. Naujoks.  She had reported to Temple Police Detective James Ragu that Plaintiff had repeatedly stared at her in the library, followed her to the subway platform and into the subway car, fondled himself while staring at her on the subway car, and offered her money in exchange for sexual favors at 10th and Arch Streets.  Plaintiff was criminally charged in the Municipal Court of Philadelphia County with stalking (18 Pa.C.S. § 2709.1), harassment (18 Pa.C.S. § 2709), disorderly conduct (18 Pa.C.S. § 5503), and open lewdness (18 Pa.C.S. § 5901).  On April 1, 2013, he was found not guilty of all charges.

4.    On October 10, 2012 (prior to the resolution of the criminal case), Plaintiff received notice from Temple that it might subject him to disciplinary proceedings based upon the events that occurred on September 25th.  Shortly thereafter, under its Student Code of Conduct, Temple charged Plaintiff with intimidation under Section C.3, creating emotional distress under Section C.6, performing a lewd or indecent act under Section C.20, and engaging in disorderly conduct under Section C.21.  Temple also scheduled a hearing before the student disciplinary board for October 25, 2012.  On October 17, 2012,

Plaintiff requested a continuance but was told that "due to the number of people involved in trying to schedule a hearing we . . . need to plan on proceeding with the hearing on the 25th." (Compl. ¶ 163.) Without the continuance, Plaintiff asserts that he was unable to obtain various character and medical evidence that he wished to use at the hearing.

5. During the October 25, 2012 hearing, Ms. Naujoks, her friend, Detective Ragu, and Plaintiff testified. Ms. Naujoks presented her version of events and her friend corroborated that she saw Plaintiff in the library, at the subway stop, and aboard the subway car. Plaintiff testified that he was at the library and that he mistakenly boarded Ms. Naujoks' train after he left, he might have been "fiddling" with his phone in his pocket during the subway ride (but was not fondling himself), and that he coincidently crossed paths with her soon after leaving the subway at 10th and Arch Streets. He further testified that he did not proposition Ms. Naujoks and that she must have misheard him due to the earbuds in her ears. Detective Ragu opined that it was likely that Plaintiff had followed Ms. Naujoks home on this and on prior occasions. The disciplinary board concluded that it was more likely than not that Plaintiff had violated sections 3, 6, 20, and 21 of the Student Code of Conduct. Plaintiff filed an appeal, which was denied. As a result, Temple expelled him from the dental school.

6. In light of the expulsion, Plaintiff initiated this action on September 4, 2013 by filing a seven count complaint, five of which were directed at Temple and its employees.[2] Temple filed its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 12, 2013.

---

2 Plaintiff sued sixteen individuals and entities all of whom, except for Ms. Naujoks, he alleges are associated with or employed by Temple University. These Temple defendants range from the president, deans, trustees, and other administrators of the university, to the university review board, to Detective Ragu.

## STANDARD OF REVIEW

7.    To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).   The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully."   Id.   To determine the sufficiency of a complaint under Twombly and Iqbal, a court must take the following three steps: (1) the court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

## ANALYSIS

8.    Temple seeks to have dismissed against it and its employees, Counts III through VII of the Complaint, which include: (a) Count III: "Equal Protection Violations against All Temple Defendants" based on Plaintiff's race and his status as a non-athlete; (b) Count IV: "Due Process Plaintiff vs. All Temple Defendants and James Ragu"; (c) Count V: "Breach of Contract Against Temple University and its Trustee"; (d) Count VI: "Deprivation of Property Rights to a Higher Education Against All Temple Defendants"; and (e) Count VII: "Breach of Plaintiff's Rights Under Temple University's Board of Trustees Policy and Procedural Manual."

4

9.      The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  Neither party disputes that Temple is a state actor for this purpose.  Essentially, the Equal Protection Clause mandates that all similarly-situated individuals should be treated alike.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  If the alleged distinction implicates a suspect class such as race, courts will uphold the state action only if it withstands strict scrutiny and is "suitably tailored to serve a compelling state interest."  Id. at 440.  However, if the distinction does not "implicate a suspect or quasi-suspect class," such as participation in school athletics, "the state action [ ] is presumed to be valid and will be upheld if it is rationally related to a legitimate state interest."  Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 423 (3d Cir. 2000) (internal quotation marks and citation omitted).

10.     In Count III (equal protection), Plaintiff contends that he was treated differently than similarly situated Caucasian students, as well as students on Temple's sports teams.  Other than this bald assertion, he alleges no facts to indicate that any similarly-situated white students were treated differently in support of his claim of racial discrimination.  Plaintiff does, however, provide an account of an African-American student on Temple's football team who pleaded guilty to certain crimes and received less discipline than Plaintiff.   Temple, in addition to noting the lack of facts supporting his racial discrimination claim, asserts that Plaintiff has failed to sufficiently plead that the Temple athlete was similarly situated to him.

11.     We agree with Temple that, at this juncture, Plaintiff has not alleged any well-pleaded facts establishing that he was treated differently because of his race.  Therefore, Plaintiff

5

has not stated a claim for violation of the equal protection clause due to racial discrimination.  However, Plaintiff's equal protection claim will survive for now because he has adequately alleged that at least one sufficiently similarly-situated individual—an African-American Temple student who was accused of a crime—but who played sports for Temple, was treated differently than Plaintiff in terms of discipline.  Thus, we will deny Temple's motion as to Count III.

12.     The Due Process Clause provides that no "State [shall] deprive any person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.  Regarding Count IV of the Complaint, while recognizing that Plaintiff has a property interest in continuing his course of study, Temple asserts that it provided a fair hearing and opportunity to appeal before expelling him.  Thus, it contends that it provided all of the process due when depriving Plaintiff of his property right.

13.      In Count IV, Plaintiff alleges a host of due process violations.  We find that at least one of these is sufficient for the claim to evade dismissal.  Specifically, Plaintiff asserts that although he requested a continuance of his disciplinary hearing, Temple denied him that opportunity.  He argues that as a result, he was unable to obtain all of the police records, character witnesses, medical witnesses, and other evidence needed for his defense.  He further contends that, as had been done with other students, the hearing should have been continued until the criminal charges against him were resolved.  Assuming these allegations to be true, we find that Plaintiff has sufficiently pleaded his due process claim in Count IV.[3]

---

[3] Because Count VI of the complaint, deprivation of property rights to a higher education, appears to be simply a restatement of the equal protection and due process claims asserted under Counts III and IV, Count VI will be dismissed as duplicative.

14.    To sustain a claim for breach of contract, a plaintiff must establish: (1) the existence of a

contract and its terms; (2) a breach of the duty imposed by the contract; and (3) the

damages that resulted.  Furey v. Temple Univ., 730 F. Supp. 2d 380, 400 (E.D. Pa. 2010)

(citing CoreStates Bank v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).

Pennsylvania courts have traditionally construed the "relationship between a *privately*

*funded college* and a student . . . as strictly contractual in nature."  Reardon v. Allegheny

Coll., 926 A.2d 477, 480 (Pa. Super. Ct. 2007) (emphasis added) (citing Barker v.

Trustees of Bryn Mawr College, 122 A. 220, 221 (Pa. 1923)).   This contractual

agreement is generally deemed to be memorialized by specific provisions in the student

handbook.  Id.; Tran v. State Sys. of Higher Educ., 986 A.2d 179, 182 (Pa. Commw. Ct.

2009); see also Furey, 730 F. Supp. 2d at 400-01 (finding the plaintiff's breach of

contract claim moot, but also holding that because the plaintiff failed to "point to any

official materials to demonstrate the creation of a contract between himself and the

University," the plaintiff "failed to show the creation of any contract").

15.     However, in light of the additional due process safeguards that public university students

possess given the schools' statuses as state actors, Pennsylvania courts have "declined to

construe the student handbook of a *public university* as a contract between the public

university and the student."   Tran, 986 A.2d at 183 (emphasis added); Borrell v.

Bloomsburg Univ., 955 F. Supp. 2d 390, 408 (M.D. Pa. 2013).  Thus, Pennsylvania

courts have established a distinction between private and public universities regarding the

availability of contract actions based on the school literature provided to the student.

16.    In Count V, his breach of contract claim, Plaintiff merely asserts that Temple:

>          violated the terms of its contract with plaintiff by depriving [him] of his
>          enrollment in dental school at Temple University, even though the agreement and

> contract provided that upon payment of tuition and attending classes and
> performing the required course of study, the student, [Plaintiff], would earn the
> credits which he could obtaining [*sic*] a dental license.

(Compl. ¶ 264.)  Temple argues, and we agree, that Plaintiff failed to identify the source

of the contract or its essential terms, which is fatal to his breach of contract claim.

Moreover, as discussed above, in that Temple is a public university, such a contract claim

cannot survive against it.  Instead, Plaintiff must look to the protections afforded to him

by the Fourteenth Amendment.  Thus, we will grant Temple's motion to dismiss as to

Count V.

17.   In Count VII of the Complaint, Plaintiff argues that Temple violated his rights under the

Temple University Board of Trustees Policies and Procedure Manual.  Specifically,

Plaintiff alleges that Temple violated Article IV, Section F, which provides that "[t]he

academic status of a student who has been expelled or suspended by a Student Conduct

Board may not be altered pending completion of the appeal process."  (See Compl.

¶ 272.)  However, a review of the proffered facts shows this allegation to be unfounded.

Plaintiff actually asserts in the Complaint that "Dr. Hanna Hasson, head faculty member

of Restorative Dentistry I" treated him as if he had already been expelled two weeks

before the appeal period elapsed by:  (a) telling some students that another student had

been expelled; (b) removing Plaintiff from his clinical rotation assignment; and (c)

ceasing to grade his assignments.  (Compl. ¶ 273.)  Temple contends that Plaintiff "fails

to identify any law or legal theory under which he has a legal remedy for the facts

alleged."  (Mot., Doc. No. 9, p. 29.)  We agree, and, to the extent that Plaintiff is

attempting to allege that the Manual created some sort of contractual right between

himself and Temple, the claim fails as Temple is a public university.  Tran, 986 A.2d at

183.   Moreover, in that Plaintiff has failed to allege that Temple actually altered his academic status pending his appeal, he has failed to establish a violation of this provision. Thus, we will grant Temple's motion to dismiss Count VII.

18.   Finally, Temple contends that:

> [i]n his 279-paragraph Complaint, Plaintiff fails to allege a single act or omission sufficient to establish liability for any of his claims against the following Temple Defendants: Kornberg School Dentistry [sic], which is also not a legal entity capable of being sued; President Neil J. Theobald; Dean Amid I. Ismail, BDS, MPH, MBA, DrPH; Dean Ainsley Carry, who was not employed by Temple University at the time of the incident that gives rise to Plaintiff's Complaint or anytime thereafter; Andrea Caporale Seiss; Theresa A. Powell; Rebekah Rhodes; The Temple University Review Board, which is not an identifiable entity, and its members; Lisa P. Deem, MDM, JD; Tom M. Johnson; Elizabeth Mannion; or Trustees of Temple University. Indeed, most of these Defendants are never mentioned in the Complaint beyond paragraph 34 after the Parties are described. Nonetheless, Plaintiff purports to sue each of these Temple Defendants individually and in their official capacities. Plaintiff's claims against these Defendants are precisely the type of "bald assertions" which the Third Circuits warns district courts to discard.

(Mot., pp. 29-30.)  Thus, Temple seeks the dismissal of these individuals.  Plaintiff does not respond to this argument.

19.   After the Supreme Court's decisions in <u>Iqbal</u> and <u>Twombly</u>, a complaint must have "facial plausibility" in that "the plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).  Obviously, merely naming various defendants but not asserting that they committed specific culpable acts, is insufficient under this standard.  After an independent review of the complaint, we agree with Temple that Plaintiff failed to assert sufficient facts to state claims against the following defendants:  (1) President Neil J. Theobald; (2) Dean Amid I. Ismail; (3) Dean Ainsley Carry; (4) Andrea Caporale Seiss; (5) Theresa A. Powell; (6) Rebekah Rhodes;

(7) Lisa P. Deem; (8) Elizabeth Mannion; and (9) the Trustees of Temple University. Thus, we will dismiss these defendants without prejudice.

20.    However, we conclude that Plaintiff has made sufficient allegations to meet the Iqbal/Twombly pleading standard regarding:  (1) the "Kornberg School of Dentistry Temple University" which Plaintiff asserts unlawfully expelled him causing various damages; (2) "the Temple University Review Board and its members" which Plaintiff alleges denied him due process by failing to consider, and by improperly weighing, various facts; and (3) Tom M. Johnson, Program Coordinator for the Office of Student Conduct and Community Standards, who Plaintiff contends denied him due process by refusing his request to reschedule the hearing.  (Compl. ¶¶ 56-60, 134-43, 163.)[4]

21.    In the paragraph quoted above, Temple did not specifically seek the dismissal of Hana Hasson, who Plaintiff alleges acted as if he had been expelled before his appeal was completed.  (Compl. ¶ 273.)  Plaintiff's only allegations against Dr. Hasson appear in Count VII of the complaint, "Breach of Plaintiff's Rights under Temple University's Board of Trustees Policies and Procedure Manual."  (Compl. ¶¶ 270-79.)  In that we will dismiss Count VII, we conclude that Dr. Hasson should also be dismissed, as there are no longer any allegations lodged against her.

**WHEREFORE**, it is hereby **ORDERED** that "Temple Defendants' Motion to Dismiss Plaintiff's Complaint Against Temple Defendants Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure" (Doc. No. 9) is **GRANTED in part** and **DENIED in part**.

Temple's motion is **GRANTED** in that: (a) Count V, "Breach of Contract Against

---

[4] We acknowledge that Temple alleges that the Kornberg School of Dentistry is "not a legal entity capable of being sued" and that the Review Board "is not an identifiable entity."  While this may ultimately be true, Temple has not yet provided any evidence or authority to support these assertions.

Temple University and its Trustee," Count VI, "Deprivation of Property Rights to a Higher Education Against All Temple Defendants," and Count VII, "Breach of Plaintiff's Rights Under Temple University's Board of Trustees Policy and Procedural Manual" are **DISMISSED with prejudice**; and (b) Defendants President Neil J. Theobald, Dean Amid I. Ismail, Dean Ainsley Carry, Andrea Caporale Seiss, Theresa A. Powell, Rebekah Rhodes, Lisa P. Deem, Elizabeth Mannion, the Trustees of Temple University, and Hana Hasson are **DISMISSED without prejudice.**  Within thirty (30) days, Plaintiff may amend his complaint to allege that any of these Defendants are culpable under any of the remaining counts in his complaint by articulating sufficient and specific facts about them.

The remainder of Temple's motion is **DENIED**.

**BY THE COURT:**

**/s/ Mitchell S. Goldberg**

_____

**Mitchell S. Goldberg, J.**